## IDAHO IRRIGATION COMPANY, LTD., ET AL. *v.* GOODING ET AL.

## GOODING ET AL. *v.* IDAHO IRRIGATION COMPANY, LTD., ET AL.

APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

Nos. 324 and 336.  Argued April 11, 14, 1924.—Decided June 9, 1924.

1. A contract by a water company in Idaho granting a water right of so much water per acre is to be read with and controlled by statutes of the State limiting allowances to the amount used for beneficial purposes, and forbidding a water-right owner to use more than good husbandry requires.  P. 523.

2. A State, through contract with an irrigation company, undertook to reclaim public lands under the Carey Act, and applied for and obtained from the Secretary of the Interior a patent for an area fixed by him, upon evidence that an ample supply of water was actually furnished to reclaim it as contemplated by the act. *Held,* that the action of the Secretary, regarded as an adjudication that the supply was adequate for all the land included, did not bind settlers on the project who purchased water-rights from the company and who sought to enjoin it from violating their contracts by selling more rights in excess of the water actually available. P. 523.

3. Owners of water-right shares in a Carey Act project in Idaho, *held* bound to share water proportionately with others who were sold like shares by the water company in excess of the water supply, but entitled to enjoin the company from disposing of additional rights. P. 524.

4. An Idaho water company which sold water rights on a Carey Act project in excess of the water supply, *held* properly to be enjoined from reselling other shares which it had sold and reacquired through foreclosure, even though appurtenant, under Comp. Stats., Idaho, § 3018, to land owned by itself, since, under the Carey Act and the Idaho law, water rights are distinct property not inseparably attached to the land for the irrigation of which they were acquired. P. 525.

285 Fed. 453, affirmed in part and reversed in part.

APPEAL and cross appeal from a decree of the Circuit Court of Appeals affirming, with modifications, a decree of injunction entered by the District Court in a suit brought by owners of water rights (with whom the State of Idaho joined, by intervention,) to prevent the above-named Irrigation Company, and other defendants, from disposing of further water rights in an irrigation " project ", in violation of the plaintiffs' contracts. The suit came into the District Court by removal from a court of Idaho.

*Mr. Gordon M. Buck,* with whom *Mr. Raymond J. Scully* was on the briefs, for the Idaho Irrigation Company, Ltd.

*Mr. Harrison Tweed* for the Equitable Trust Company of New York et al., Trustees.

*Mr. W. G. Bissell,* with whom *Mr. Branch Bird* and *Mr. Karl Paine* were on the briefs, for Gooding et al.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

These are separate appeals by the respective parties from the same decree, 285 Fed. 453, in part affirming and in part reversing the Federal District Court for Idaho.

The Idaho Irrigation Company, Limited, is a corporation organized as a construction company for the purpose of reclaiming lands under the Carey Act, c. 301, § 4, 28 Stat. 422. The other appellants in No. 324 (appellees in No. 336) are trustees for bondholders of the Irrigation Company and certain intervening individual owners of land, who had purchased water rights after this suit was brought and a *lis pendens* filed. Appellees (appellants in No. 336) are individual owners of water rights, purchased from the Irrigation Company under the Carey Act, and the State of Idaho, which intervened as a party plaintiff.

The water rights are represented by shares of stock in the Big Wood River Reservoir & Canal Company, organized as an operating company by the Irrigation Company in pursuance of contracts with the State of Idaho.

The suit, brought in a state court and removed to the Federal District Court, was to enjoin the Irrigation Company and the trustees from selling, disposing of or transferring upon the books of the company any shares of the Reservoir and Canal Company held as assets of the Irrigation Company or as trustees for the benefit of bondholders; and to enjoin the Irrigation Company from making further contracts for the sale of water rights, or selling, disposing of or transferring any shares of the Reser-

voir & Canal Company which the Irrigation Company
owned or controlled.

By the Carey Act the United States binds itself to
donate, grant and patent to a State, complying with
stated conditions, desert lands, which the State may cause
to be irrigated, reclaimed and occupied. The State is
required to file a map of the land proposed to be irrigated,
showing the plan of irrigation, etc., and is authorized to
make contracts to cause the lands to be reclaimed, and to
induce their settlement and cultivation. Upon satisfac-
tory proof the Secretary of the Interior is directed to issue
patents to the State or its assigns. In pursuance of the
Carey Act and of its own statutes to carry that act into
effect, c. 136, Idaho Comp. Stats., 1919, p. 848, the State
of Idaho entered into contracts with the Irrigation Com-
pany for the reclamation of approximately 167,000 acres
of land; and the Company entered into contracts with
appellees and other settlers to furnish water for lands to
be acquired by them in the project, to be represented by
shares of stock in the Reservoir & Canal Company.

By these contracts, made on January 2, 1909, and prior
dates, the Irrigation Company, understood to be the
owner of the right to divert 6,000 cubic feet per second
of time of water, agreed that it would furnish and de-
liver to the owners of such shares all of the appropriated
waters to the extent of one-eightieth of a cubic foot per
second of time per acre; and that water rights or shares
should not be sold beyond the carrying capacity of the
canal system or in excess of the waters appropriated.
Shares of stock of the Reservoir & Canal Company were
to be issued in the proportion of one share for each one-
eightieth of a cubic foot per second of time. It was
further agreed that the irrigation works should be com-
pleted within five years from the date of the contracts,
at which time the obligation to furnish the full one-

eightieth of a cubic foot per second of time per acre should be in force and ·effect.

Upon application of the State of Idaho and evidence to the effect that an ample supply of water was actually furnished and in sufficient quantity to reclaim the lands as contemplated by the Carey Act, the Secretary of the Interior fixed the area of the project at 117,677.24 acres and caused a patent of the United States therefor to be issued and delivered to the State.

The injunction was sought upon the ground that the water, appropriated and available, was wholly insufficient to irrigate the entire area and was no more than sufficient to irrigate 40,939 acres, and that water rights had been sold for lands largely in excess of this area. A *lis pendens* was filed for record in the various counties where the property was situated, which had the effect of imparting constructive notice to all of the pendency of the suit. Comp. Stats. 1919, § 6674. The answer of the Irrigation Company alleges that water right shares had been sold for more than 87,000 acres; that the supply of water appropriated and available was sufficient for the lands represented by these shares and over 25,000 acres in addition. The answer avers as a further defense that the action of the State and of the Secretary of the Interior and the issuance of the patent thereon, constituted a determination by the State of Idaho and the Secretary of the Interior that the water supply and the capacity of the irrigation works were sufficient and that this was binding and conclusive in the case..

It was stipulated at the trial that the total outstanding shares of the Reservoir & Canal Company were 88,835.71. Of these 12,722.64 shares, originally sold to individuals, had been purchased by the trustees at foreclosure sale, out of which 3,143.61 shares were sold to the intervenors after the commencement of the suit and the filing of the *lis pendens*.

The District Court took evidence in open court under Equity Rule 46 and delivered an opinion in favor of appellees, upon which a decree was entered. It determined from the evidence that the reasonable duty of water was 2¾ acre feet per acre for the entire area, without deduction for roads or other non-irrigable tracts; and, without attempting to determine the exact quantity of available water, found that the supply was and would continue to be insufficient to meet the demands of the outstanding contracts, exclusive of those which the Company had acquired through foreclosure proceedings. These findings have support in the evidence and the conclusion is justified that the available water will fall short of supplying as much as 50,000 acres of land. The allowance of 2¾ acre feet per acre is much less than the quantity stipulated in the contract, but the reduction by the court was properly made under the Idaho statute, which requires that the amount of water allowed shall never be in excess of the amount used for beneficial purposes, Comp. Stats., 1919, § 7033; and the statute which forbids the use by any water right owner of more water than good husbandry requires. § 5640. These provisions are to be read into the contracts. *State v. Twin Falls, etc., Co.,* 30 Idaho, 41, 77. By statute it was made unlawful for the Irrigation Company to contract to sell more water than it had. § 5636. *State v. Twin Falls, etc., Co., supra,* 65; *Gerber v. Nampa, etc., Irrigation District,* 16 Idaho, 1, 17.

We cannot accept the contention of appellants that the application of the State and the issuance thereon of a patent to the lands by the Secretary of the Interior constituted a determination binding on the individual water right owners that an ample supply of water was available for the entire 117,677.24 acres. Whatever may be the effect of this action as between the United States and the State of Idaho, it is perfectly clear that it can have no

effect upon the rights of the individual land and water owners. Their rights are to be measured by the contracts; and by these contracts the Irrigation Company bound itself to furnish one-eightieth of a cubic foot per second of time per acre. We fully agree with the District Court that the individual appellees, not being parties to these proceedings, are not bound by them, and in saying: "They hold contracts imposing upon them heavy obligations, and in turn conferring upon them valuable rights. It would be shocking to hold that these rights could be taken away or substantially impaired by a finding of fact or conclusion of law (we are not advised which) made by an administrative officer in an ex parte proceeding in which they did not have an opportunity to be heard." See also *Twin Falls Oakley Land & Water Co.* v. *Martens,* 271 Fed. 428, 433.

As among the individual owners the water rights conveyed by the Irrigation Company are vested and under the contracts must be shared proportionately; but the Irrigation Company is without right to continue to contract to sell and deliver water from a supply that has already been exhausted, thereby compelling these owners to still further diminish their proportionate rights. As said by the Supreme Court of Idaho in *Sanderson* v. *Salmon River Canal Co.,* 34 Idaho, 303, 310: "It is one thing to prevent any more rights vesting, in order to avoid a hardship to those whose rights have already vested, and it is another thing to wipe out rights which have already vested through the issuance of contracts and the use of the water." *State* v. *Twin Falls Land & Water Co.,* 37 Idaho, 73, 85; *Boley* v. *Twin Falls Canal Co.,* 37 Idaho, 318, 331–332; *Caldwell* v. *Twin Falls, etc. Co.,* 225 Fed. 584, 592–595.

We think the District Court was also right in including in the injunction the 12,722.64 shares of stock purchased by the trustees at foreclosure sale. These shares were

the property of the Irrigation Company, and, representing an excess of available water supply, should be extinguished and their resale enjoined. They are subject to the same principle that was applied to the issuance and sale of additional original shares in excess of such supply. The conclusion of the District Court was based upon the theory that the ownership and control of these shares were in the Irrigation Company and this is supported by the evidence. Indeed, it was so stipulated between counsel at the trial. See *Childs* v. *Neitzel,* 26 Idaho, 116, 127, 129–131.

The Court of Appeals, however, held that the decree of the District Court in this respect was erroneous to the extent of 5,322.26 shares, which were appurtenant to the lands owned by the Irrigation Company and its trustees when the suit was commenced and *lis pendens* filed; but we are unable to see that these shares occupy any different status from the others. The stipulation of ownership and control included all. If the injunction was bad as to the 5,322.26 shares, it was bad as to all. The Irrigation Company, having oversold the available water supply, exclusive of the shares purchased at foreclosure sale, cannot be permitted to sell additional shares, whether still unissued, or issued and sold but re-acquired, and whether acquired before the suit and *lis pendens* or afterwards. It may be conceded that the water rights represented by these shares were appurtenant to the lands for the irrigation of which they had been acquired, Comp. Stats. Idaho, § 3018; but they were not, under the Carey Act and the laws of Idaho, inseparably appurtenant to the lands, but constituted distinct and separable property rights. *Bennett* v. *Twin Falls, etc. Co.,* 27 Idaho, 643, 653. To permit the use and enjoyment of these water rights by the Irrigation Company, with the consequent further reduction of individual rights purchased from the Company, would be to ignore the distinction between the wrongdoer

and the innocent, and is not to be suffered by a court of equity.

In so far as the decree of the Court of Appeals agrees with that of the District Court it is affirmed; but in respect of the matter last discussed it is reversed and the decree of the District Court affirmed in all particulars.

